IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LEAH BIDNER, | ] |
| Plaintiff, | ] |
| v. | ] |
| | ]   4:16-cv-01202-KOB |
| COMMUNITY HEALTH SYSTEMS, INC., et al., | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

This case centers on Plaintiff's allegations that in the course of her employment at Trinity Medical Center she was sexually harassed, discriminated against, and otherwise harmed in violation of Title VII of the Civil Rights Act of 1964 and Alabama law. Ms. Bidner originally named as Defendants Community Health Systems, Inc. (CHSI) and CHS Health Services, LLC, later dismissing CHS Health Services, LLC and adding Affinity Hospital, LLC. *See* (docs. 6–9). CHSI asserts, pursuant to Rule 12(b)(2), that it does not belong in this suit, and this matter is before the court on CHSI's "Motion to Dismiss for Lack of Personal Jurisdiction." (Doc. 12). Plaintiff filed a Response, (doc. 18), and CHSI filed a Reply. (Doc. 21).

CHSI challenges this court's personal jurisdiction over it primarily via the affidavits of Ben Fordham. (Doc. 12-1, Doc. 21-1). CHSI also submits several opinions where courts have found that they lacked personal jurisdiction over CHSI. (Docs. 12-2 through 12-8, Docs. 21-11 through 21-14, Docs. 21-16 through 21-17, Doc. 23). In support of her position that the court has jurisdiction over CHSI, Ms. Bidner presents CHSI's 2015 10-K form and a page from the www.chs.net website listing CHSI's subsidiary hospitals in Alabama. (Docs. 18-1 and 18-2).

CHSI additionally submits the "Legal Information" page from the chs.net website (doc. 21-2) and a Certificate of Need filed by Affinity Hospital. (Docs. 21-3 through 21-10).

## I.      Factual Background

The court largely relies on Mr. Fordham's affidavits for the following statement of facts, but notes where Ms. Bidner disputes Mr. Fordham's assertions.

From 2008 to 2014,[1] Mrs. Bidner worked for Affinity Hospital, LLC, which at the time of her employment did business as Trinity Medical Center. In October 2015, Trinity altered its name to Grandview Medical Center and changed its location. For the sake of convenience, the court will refer to the hospital in question as "the Hospital" or "Affinity."

Mr. Fordham asserts that CHSI is a publicly-traded Delaware holding company with its principal place of business in Franklin, Tennessee. He explains CHSI's corporate structure as follows: (1) CHSI owns, through subsidiaries, 159 hospitals nationwide; (2) CHSI does not directly own Affinity Hospital, LLC, nor does it directly own Grandview Medical Center nor do business as Grandview Medical Center; (3) CHSI does indirectly own Affinity Hospital, LLC, d/b/a Grandview Medical Center, with seven entities in the ownership chain separating CHSI and Affinity. When Affinity did business as Trinity, six separate entities existed in the ownership chain between CHSI and Affinity. Mr. Fordham avers that CHSI does not operate any of its subsidiary hospitals.

Specifically, Mr. Fordham asserts that at all relevant times, CHSI did not control the Hospital's day-to-day operations or direct the actions of its directors or executives; did not exercise authority over employment issues at the Hospital or disputes concerning Hospital staff

---

[1] Alleged in Ms. Bidner's Complaint and not disputed by CHSI.

and never required the Hospital to adopt bylaws or any policies and procedures governing employment, including the Hospital's sexual harassment policy. CHSI did not employ Hospital staff or control the number of Hospital staff, never exercised control over the manner in which Hospital employees performed their duties, and never paid Hospital employees. CHSI did not employ Ms. Bidner or her supervisors and was not responsible for any employment decisions regarding Ms. Bidner.

CHSI did not enter into any partnership, joint venture, or joint enterprise with the Hospital and did not enter into an agreement with the Hospital to share in its operation or to combine money, property or time in the conduct of a business deal. CHSI maintained its own separate accounting records. Patients paid the Hospital and not CHSI, and the Hospital maintained its own banking relationships. CHSI and the Hospital held independent Board meetings and maintained their Board minutes and records separately. The membership of the Boards did not overlap.

Mr. Fordham further declares that the Hospital was not designated as an agent for CHSI. He states that CHSI has not transacted or registered to do business in Alabama, has not appointed an agent for service of process in Alabama, and has no office, place of business, real property, clients, or employees in Alabama. Mr. Fordham asserts that CHSI has not advertised, marketed, or offered services for sale in Alabama, nor has CHSI consented to jurisdiction in Alabama.

Ms. Bidner disputes that CHSI is merely a holding company and contends that CHSI does own outright and operate its subsidiary hospitals and maintains corporate and hospital employees. She argues that CHSI previously consented to jurisdiction as a defendant in Alabama courts.

**II.     Discussion**

This court adopts much of the following reasoning from its memorandum opinion deciding CHSI's 12(b)(2) motion in *In re Community Health Systems, Inc.*, MDL 2595, No. 15-cv-00222-KOB (Sept. 12, 2016), ECF No. 144.

**A.      Legal Standard**

A Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. The court has federal question subject matter jurisdiction over this action. Title VII does not include a service of process provision, so Alabama's long-arm statute serves as the basis for this court's exercise of personal jurisdiction over Defendants. *See* 42 U.S.C. §§ 2000e, *et seq.*; ALA. R. CIV. P. 4.2(b); *Sculptchair, Inc. v. Century Arts, Ltd.* (citing *Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction.").

A two-prong test determines whether a state court may exercise personal jurisdiction over a nonresident defendant: first, the long-arm statute of the state where the case was filed must allow for jurisdiction; second, "sufficient minimum contacts [must] exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Alabama's long-arm statute is coextensive with the Due Process Clause, so the court need only undertake the sufficient minimum contacts inquiry. *See Ex parte Alamo Title Co.*, 128 So. 3d 700, 709

(Ala. 2013) (quoting *Ex parte DBI, Inc.*, 23 So. 3d 635, 643 (Ala. 2009)).

Sufficient minimum contacts are present where a defendant has engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Depending on the kind of purposeful availment present, a court may possess specific or general personal jurisdiction. The court exercises specific personal jurisdiction "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum," creating a "'relationship among the defendant, the forum, and the litigation.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). In contrast, the court may exercise general personal jurisdiction over any claim against a defendant whose "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

When a court decides a personal jurisdiction challenge based on briefs and accompanying evidence, but without holding a discretionary evidentiary hearing, a plaintiff must make a prima facie case of jurisdiction. *See Madara*, 916 F.2d at 1514 (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (citing *Morris*, 843 F.2d at 492). Sufficient evidence to defeat a directed verdict is "substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing

conclusions." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001) (internal quotations omitted) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).

In this case, CHSI has submitted affidavits and other materials in support of its motion; therefore, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)). The court draws all reasonable inferences in favor of the plaintiff. *Id.* (citing *Madara*, 916 F.2d at 1514). Otherwise, where, as here, a motion to dismiss presents a factual challenge to the court's jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotations omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), *cert. denied*, 454 U.S. 396 (1981)).

    **B.**    **General Personal Jurisdiction**

Plaintiff's Response asserts only general personal jurisdiction, arguing that CHSI does business in Alabama by operating the hospitals it owns in the state, including Affinity. Plaintiff's position boils down to an agency argument and so the court will address it as such. However, the court notes that CHSI has presented evidence that it in no way operated or directed the operations of the specific Hospital in question. Ms. Bidner has not attempted to dispute CHSI's specific arguments that it did not exercise authority over employment at the Hospital and did not control the manner in which employees, including her supervisors, performed their duties. Thus, the court **FINDS** that, absent a showing that CHSI and Affinity operated as a single legal entity,

Plaintiff has not met her burden to show that CHSI is subject to suit in Alabama.

CHSI has presented evidence establishing that CHSI is a holding company with no employees, a corporate entity separate and distinct from the Hospital. Mr. Fordham's first affidavit states that CHSI is a parent company that does not directly own Affinity. "It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F. 3d 1286, 1293 (11th Cir. 2000) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925)); *see also Ex parte Unitrin, Inc.*, 920 So. 2d 557, 561 (Ala. 2005) ("Doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation."). Therefore, the relationship of parent and subsidiary *alone* does not confer personal jurisdiction upon this court over CHSI itself.

Plaintiff appears to argue that personal jurisdiction should attach to CHSI based on the business activities and actions of its subsidiaries because those subsidiaries function as agents of CHSI. Ms. Bidner describes CHSI's subsidiaries as "closely controlled affiliates" and asserts that "CHSI has conducted substantial business in Alabama and derived revenue and benefit from such operations." (Doc. 21 at 4, 5). But this characterization begs the question. To determine whether the activities of a subsidiary confer jurisdiction over a parent company through an agency relationship, the court examines whether the subsidiary is merely conducting the business of the parent company, making the entities' distinct corporate identities a mere formality. *See Meier*, 288 F.3d at 1274–75.

Plaintiff bases her agency argument in part upon a page on the www.chs.net website that lists CHSI's indirectly owned hospitals in Alabama. Language at the bottom of that page reads:

7

> The terms "CHS" or the "Company" as used in this website refer to Community Health Systems, Inc. and its affiliates, unless otherwise stated or indicated by context. The term "facilities" refers to entities owned or operated by subsidiaries or affiliates of Community Health Systems, Inc. References herein to "CHS employees" or to "our employees" refer to employees of affiliates of CHS Inc.

Plaintiff apparently reads this page as acknowledging that CHSI and its subsidiaries function as one collective and integrated entity.

However, Mr. Fordham's second affidavit states that CHSPSC, LLC[2]—not CHSI—owns and operates the website. The "Legal Information" page of the chs.net website, attached as an exhibit to Mr. Fordham's second affidavit, confirms this ownership and also clarifies that the website's use of plural pronouns is for the sake of clarity and does not indicate legal consolidation of CHSI and its indirectly owned subsidiaries.[3] Plaintiffs bear the burden of

---

[2] Mr. Fordham's affidavits explain that CHSPSC, LLC is another indirectly owned subsidiary of CHSI that provides consulting services to CHSI. (Doc. 12-1 at 1, Doc. 21-1 at 1).

[3] The Legal Information section specifies that CHSI "is a holding company and does not engage in any business other than those activities associated with being a publicly traded (NYSE: CYH) stock company, such as listing agreements with the New York Stock Exchange ('NYSE') and registration and compliance with the U.S. Securities and Exchange Commission ('SEC'). CHSPSC, LLC provides management services to Community Health Systems, Inc., including assisting it with its compliance obligations with both the NYSE and the SEC. Both of these institutions require that public companies maintain information on an internet website that is accessible to shareholders; this website fulfills those obligations. The information contained in the website must be consistent with the official filings with the regulatory institutions. Integral to those requirements is that information be presented in a consolidated fashion and include statements and operating results for Community Health Systems, Inc. and its subsidiaries taken as a whole. Statements that include the words 'we,' 'us,' 'our,' 'the Company,' and similar inclusive words are intended to be summary information about the consolidation of Community Health Systems, Inc., and its subsidiaries taken as a whole, and are not intended to bind or imply that the actions of one legal entity should be attributed to the actions of another legal entity (such as Community Health Systems, Inc.). In its registered filings with the SEC, Community Health Systems, Inc. is required to adhere to the SEC's principles of 'plain English' and avoid the use of defined terms, jargon, and parenthetical exculpatory statements; for ease of reading, Community Health Systems, Inc. and CHSPSC, LLC adhere to those principles throughout this website.

rebutting this evidence, but they have failed to do so.

This court **FINDS** that the list of CHSI's subsidiary hospitals on a website owned and operated by CHSPSC, LLC, a separate entity from CHSI, fails to support a finding that CHSI has purposefully availed itself of the privilege of conducting activities with Alabama. Alternatively, the court **FINDS** that the language on the website owned and operated by CHSPSC, LLC, including but not limited to the language in the section "Legal Information," fails to establish an agency relationship between CHSI and Affinity, and otherwise fails to establish CHSI's minimum contacts with Alabama. Instead, the court **FINDS** that the language on the website establishes that CHSI is a separate legal entity from Affinity.

Plaintiff also relies on similar inclusive, collective language in CHSI's 2015 Form 10-K[4] filing with the United States Securities and Exchange Commission ("SEC"). However, the Form 10-K clarifies the use of that inclusive, collective phrasing by explaining that such phrasing is meant to adhere to the SEC's principles of plain English for ease of reading, but is not meant to

---

Each hospital affiliated with Community Health Systems, Inc. and CHSPSC, LLC is owned (or leased) and operated by a separate and distinct legal entity. Each such legal entity is responsible for the healthcare services delivered at its respective facility, employs its own management and other personnel, and grants medical staff privileges and credentials to its own, separate medical staff." (Doc. 21-2 at 1).

[4] Form 10-K is an annual report that the SEC requires companies to file and that gives a comprehensive summary of a company's financial performance. The Form 10-K upon which the Plaintiffs rely contains the following language: "Throughout this Form 10-K, we refer to Community Health Systems, Inc., or the Parent Company, and its consolidated subsidiaries in a simplified manner and on a collective basis, using words like 'we,' 'our,' 'us' and the 'Company.' This drafting style is suggested by the Securities and Exchange Commission, or SEC, and is not meant to indicate that the publicly-traded Parent Company or any particular subsidiary of the Parent Company owns or operates any asset, business or property. The hospitals, operations and businesses described in this filing are owned and operated, and management services provided, by distinct and indirect subsidiaries of Community Health Systems, Inc." (Doc. 18-1 at 4).

indicate that CHSI operates Affinity or to attribute to CHSI the acts of its subsidiaries. The court **FINDS** that the language in these SEC filings fails to establish an agency relationship between CHSI and Affinity and that such language otherwise fails to establish CHSI's minimum contacts with Alabama. Plaintiff bears the burden of rebutting that evidence from the declaration, and the court **FINDS** that she has failed to do so.

Plaintiff additionally alleges, based on statements in the 10-K, that CHSI filed for and received a Certificate of Need (CON) from the Alabama Certificate of Need Review Board and defended that CON in Alabama courts, spending upwards of $100 million on constructing a new hospital in Birmingham, Alabama. CHSI has submitted excerpts from the CON in question showing that it was filed by Affinity, not CHSI (docs. 21-3 to 21-10), and that CHSI was dismissed from the lawsuit related to that CON because the court lacked personal jurisdiction over CHSI. (Doc. 21-11). Thus, the court **FINDS** that the CON does not provide grounds for this court to exercise jurisdiction over CHSI.

Ms. Bidner also argues, based on a list of CHSI subsidiary hospitals in the 10-K, that CHSI "own[s] outright" eight of the ten hospitals it operates in Alabama and has entered into leasehold agreements in Alabama. Ms. Bidner also relies upon language in the 10-K's "Acquisitions and Divestitures" section to assert that CHSI has profited from the sale of a hospital in Alabama. The court **FINDS** that language from the 10-K, for the reasons discussed above, is insufficient to rebut the statements in Mr. Fordham's second affidavit that CHSI neither directly owns nor leases any hospitals in Alabama[5] and has never received any direct cash

---

[5] Mr. Fordham's second affidavit includes a list of CHSI's seven subsidiary hospitals in Alabama and the number of entities between each hospital and CHSI; the numbers range from three to nine.

receipts from any of its subsidiary hospitals. *Accord Ergo Licensing, LLC v. Cardinal Health, Inc.*, 2009 WL 2021926 (D. Me. 2009) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980) ("[F]inancial benefits accruing to a corporate parent from a subsidiary's relationship to the forum state will not support the exercise of jurisdiction over the parent in that forum if the parent does not itself have a 'constitutionally cognizable contact' with that forum state.").

Finally, Plaintiff asserts, again based on language in the 10-K, that CHSI's corporate compliance program and statement that it has "137,000 employees" indicate that CHSI does have employees and is not merely a holding company. Setting aside the question of whether these employees could establish minimum contacts with Alabama, CHSI admits that it maintains a corporate compliance program required of all publicly-traded companies.[6] Mr. Fordham's second affidavit explains that the members of CHSI's compliance committee are CHSPSC employees and affirms that CHSI itself has no employees. Moreover, as the 10-K explains, the use of plural pronouns in the context of the 10-K does not establish that CHSI and its subsidiaries operate as a collective unit. The court **FINDS** that Plaintiff has not met her burden to rebut this evidence and that the corporate compliance program and total employee number do not establish sufficient minimum contacts with Alabama for this court to exercise jurisdiction over CHSI.

Having found that no sufficient minimum contacts exist to satisfy the Due Process Clause, this court does not reach the question of whether the exercise of jurisdiction would

---

[6] Section 303A.10 of the NYSE Listed Company Manual provides: "Listed companies must adopt and disclose a code of conduct and ethics for directors, officers and employees, and promptly disclose any waivers of the code for directors or executive officers." (2017), http://nysemanual.nyse.com/LCMTools/PlatformViewer.asp?selectednode=chp_1_4&manual=%2Flcm%2Fsections%2Flcm-sections%2F.

"'offend traditional notions of fair play and substantial justice.'" *Madara*, 916 F.2d at 1514 (quoting *Int'l Shoe*, 326 U.S. at 316).

## IV. Conclusion

The court **FINDS** that the Plaintiffs have failed to establish that Affinity is an agent of CHSI for the purpose of establishing CHSI's minimum contacts with Alabama. The court **FINDS** that the Plaintiffs have established neither *general* personal jurisdiction nor *specific* personal jurisdiction over CHSI in Alabama. Accordingly, the court **GRANTS** CHSI's motion to dismiss for lack of personal jurisdiction. The court will enter a separate order consistent with this opinion.

**DONE** this the 23rd day of January, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE